Can I proceed? Whenever you're ready. May it please the court, counsel, Brian Spears of Spears, Manning and Martini for the defendant appellant, good morning. I want to begin my remarks and focusing on the Fourth Amendment. And I'd like to start with two points that I think we can all agree on. The first is that cell phones are categorically different than other personal effects. The Supreme Court in Riley versus California established this opinion on this principle 11 years ago and explain exactly why cell phones are qualitatively and quantitatively different. This court, too, has applied Riley, specifically in the case of the United States versus Smith, and explain that electronic devices like cell phones are recorded broader constitutional protections. How does that interplay with the fact that borders are also different? Well, borders are different. And of course, there is an exception for border searches, just like in Riley, there is an exception for the search incident to an arrest. So the question I think that Riley frames for this court is whether the exception to the warrant requirement is sufficiently tethered to the purposes of the particular exception under consideration. Here, of course, it's the border search exception. So the question this court needs to consider is what are the purposes of the border search exception? And the Supreme Court has set forth very clearly that the purpose of the border search exception is to protect national security and to protect persons and things that are unwanted from coming into the country. Okay, so the search is justified as an interest in preventing contraband. Why doesn't that permit a search for evidence of past contraband-related crimes? Right, because if you look at the body of Supreme Court cases on this subject, they focus on contraband. They focus on the admissibility of a person and contraband. That's the justification for the border search exception. So here, where those issues were not in play at all, there was no question about Mr. Kamaldas' admissibility. There was no reason to believe that his cell phone contained contraband. I appreciate that, but I'm asking a slightly different question, which may or may not be exactly apropos for your client. But if you would concede, and I think you do and must, that there's an interest in preventing contraband, why doesn't that permit a search for evidence of past contraband-related crime, which may or may not be applicable to your client, but they don't know? Why is it just that one point in time? Well, because I think it comes down to the nature of cell phones in particular. You can search a cell phone at the border for evidence if you get a warrant, and that really is the teaching of Riley. And if you don't have a warrant, then it's simple that you cannot. And so the United Circuit has gotten to, not all the way to the probable cause. Is your argument that we need a warrant to search a phone is required for probable cause? Yes, Your Honor, that is. And then your fallback argument is, if not, then reasonable suspicion at least is required. Reasonable suspicion that contraband is contained on the device. Okay, and then just so I have the scope of the arguments, is your fallback argument after that that reasonable suspicion is required for a forensic search but not a manual search, or are those the same in your view? Yeah, thank you, Your Honor. That's a good question. Our position is that I think it's very difficult to sort of draw a distinction between a manual and a forensic search. However, in our case, this case is about forensic searches. So we're not in the category of manual search. So our precise position on appeal here is for a forensic search of a cell phone, which occurred here. And the search has actually occurred by a different agency weeks later. In that context, and also where admissibility is not an issue and there's no reason to believe that the cell phone contains contraband, Riley would require probable cause and a warrant. Go ahead. So I think one of Judge Perez's questions sort of to pick up on where she's talking about evidence of contraband. In this case, the allegations that sort of lead to the flag on your client have to do with the import of drugs into this country, right, which is a Customs and Border Patrol sort of thing, right? That's something they're concerned about. Does that matter here? I'm not sure if that's what my colleague was asking, but I'm interested. If we had here instead a fellow who was believed to be moving drugs between Brooklyn and New Haven, that was the crime he was suspected of. But they had no alleged link to the import of contraband into the United States. Would that change our calculus? I think it does to a certain degree in terms of the level at which the border exception would apply. As part of our balancing, maybe, of the government's interest? Right, but I don't think it's a sufficient basis under the circumstances to get past Riley. I recognize that, and the district court in this case did regard the fact that the offense involved a transnational crime, that their reasonable suspicion of that transnational crime itself was sufficient to justify the search, the forensic search of the phone. Our position is that that's not sufficient. At a minimum, you would have to have some, well, probable cause is where we start, but at a fallback position, you'd at least have to have a reasonable suspicion that the cell phone itself contained contraband, which it didn't. And even in this case, there was no finding that reasonable suspicion existed to believe that there was evidence of a transnational crime. So the district court here was merely finding that there was some nexus to the defendant and a transnational offense, not his cell phone, to a transnational offense. And our position is that under Riley, you have to think about the cell phone because cell phones are different. You keep saying Riley as if it's clear, but we have the 11th Circuit at least and the 4th Circuit coming up with a presumably different conclusion than you are. So is your suggestion that they got it wrong or is there something different about this case? Yes, our suggestion is certainly that the 11th Circuit got it wrong and the 4th Circuit did as well. Our position is more aligned with what are now three district court opinions within this circuit. And the 9th Circuit. Well, within this circuit, you have in the eastern. Well, no, but obviously those are not binding on us. That's understood. But what we're seeing is that the trend here is following Riley, probable cause and a warrant is required. And I would note as well that this court has extended Riley beyond the search incident exception. So in the case which is not cited in any of the briefs, but I'll just note it, in the United States versus Kirk-Tang Yuk, there's a footnote. This is a 2018 opinion. There's a footnote that describes how Riley would apply to the plain view exception. And Kirk-Tang Yuk said while officers could seize a cell phone in plain view, they cannot search it without probable cause and a warrant. And so we are seeing the extension of Riley within this circuit, by this circuit, into other contexts. We said that a search of a notepad is okay for evidence of a financial crime. Why doesn't that address your scope argument about contraband versus evidence? Yes. So Levy, I'm aware of Levy essentially was 18 pieces of paper were found in a traveler's luggage. The decision was decided shortly after Riley. There's no reference to Riley. It doesn't involve a cell phone. And at the end of the day, in our view, sort of stands for the sort of fairly clear point that, you know, agencies can cooperate with each other. I think one of the issues there was, you know, can customs rely on information that was provided from another agency? Well, but it was very specific there, though, that it was the evidence of the crime that was what was at issue and not contraband itself, right? That's correct. Yes, Your Honor. So why does that principle not apply to limit what we're talking about here, whether it's cell phones or notepads? Because cell phones are different. Cell phones are different. You know, a cell phone for all the- So Riley may be what it said about cell phones supersedes that line. That's correct. And Levy didn't even address the import of Riley, I think was very focused on 18 pieces of paper found in a traveler's luggage. I do see that my time's up. I'm happy to answer any other questions. So with the presider's permission, I want to talk a bit about the passwords. So why didn't you argue that that was involuntary consensual search rather than coerced testimony? With the passwords? Yes. So, yeah, the position that was taken at trial was that it was a custodial interrogation in violation of Miranda that led to the passwords being provided. So our position on appeal mirrors that. We developed a record of what occurred at the border that established that Mr. Komendos was in custody. And, therefore, being asked for his passwords was in violation of Miranda. Thank you, counsel. You're reserved a few minutes for rebuttal. Thank you. May it please the court. Aisha Bhandari from the American Civil Liberties Union for AMICI. I'm here to request that the court set a constitutional standard going forward that will adequately protect the rights of the tens of millions of international travelers. Are you just basically conceding then that a good faith exception applies? Not at all, Your Honor. I don't think good faith is appropriate to be applied in this context where- You just said set a standard. So can you harmonize the two for me? Absolutely. I think if this court were inclined to say that good faith applied here, it should nonetheless opine on the merits of the Fourth Amendment question going forward so that travelers are adequately protected. I'm happy to discuss good faith if you prefer, but I- It seems to me that you at the gate started off with conceding that we might have a good faith exception issue here, and I just wanted to make sure I heard you correctly. Understood, yes. Briefly on good faith, I think good faith is not appropriate where we're talking about a policy position of the government. It's policy position that these searches don't violate the Fourth Amendment, and it is deliberately taking the chance in conducting these searches that they may, in fact, violate the Fourth Amendment. And in Smith, the 2020 case that Mr. Spears referred to, this court noted that good faith is appropriately applied in cases of negligence, random negligence by an officer or something that they would not have understood. The Ninth Circuit in Canoe, for example, did not apply good faith in that case in holding that reasonable suspicion of digital contraband is required. But nonetheless, I do want to provide the larger context that these searches do affect tens of millions of travelers, the vast majority of whom are not ever suspected of any crime, and who are nonetheless subject to these invasive searches. So can I ask you to focus on a question that I asked your colleague? If we all agree, and I think you all do, that the border search exception is justified by an interest in preventing contraband, why doesn't that permit a search for evidence of past contraband-related crime? Yes, Judge Perez. The reason for that is there is no connection to searching for evidence of past contraband to the person being physically present at the border. And that is relevant because warrantless searches at the border are permitted because they are the only opportunity for the sovereign to exclude those goods, to exclude that contraband. If you cannot search a vehicle, for example, that contraband will enter the country. And I think it is noteworthy that the Supreme Court, in every case of holding a warrantless search at the border, has involved physical contraband, whether that's Flores-Montano, Montoya de Hernandez, United States v. Ramsey, all of those cases involved physical contraband. And Ramsey, I think, is particularly instructive to your question. Isn't part of the border search rationale the persons, excluding persons who are engaged in contraband, whether in smuggling contraband, whether or not they have it at that moment? So I guess it's a little bit different from Judge Perez's question about past smuggling. It's maybe present but not on the person. Yes. Yes, Judge Park. I think the difference is that while there may be an interest in searching for evidence of people who are smugglers, evidence of past smuggling, the warrantless border search exception exists for the limited purpose of excluding that contraband at the moment at the border. So the interest in identifying smugglers is the same regardless of whether the person's at the border or in the interior. And, of course, in the interior, Customs and Border Protection or HSI cannot claim the ability to conduct warrantless searches of people's laptops and devices in aid of finding smugglers, even people who are engaged in active smuggling while they are domestically in the country. So what's the rule you're asking us for? Well, agreeing with Mr. Speer is that Riley would compel a warrant requirement. At the very least, this court should hold that Canoe got it right. Does that apply to all searches? So even a manual one where the customs official says, I need to check your ID, make sure it's consistent with the one on your phone? Yes, Your Honor. And the reason for that is that manual searches, again, per the government's position, are in no way limited to the factual pattern that you just outlined. In fact, a manual search could be as invasive as an officer saying, I'd like to take your laptop into a back room for several hours to conduct extensive searches, deliberate searches, deliberate identifying of information. So again, the scope of the policy and the manual searches that the government can conduct at the border. And again, Riley involved a manual search of a flip phone, which is much less advanced than the devices we have today. The privacy interests are the same. Would this apply to laptops, too? Yes, Your Honor. And again, I think the clean bright line rule that Riley advanced a preference for would apply to digital data. And Riley discusses extensively why digital data requires a warrant to even manually search it. Yes, Your Honor. And at a bare minimum, reasonable submission of digital contraband. And that is the requirement Kano set for manual searches. Has any court of appeals held that a warrant is required? They have not held a warrant requirement for all searches. But notably, in the Ninth Circuit, you do need a warrant for any border device searches that are not for the limited purposes of searching for digital contraband. So you need a warrant. And in the Fourth Circuit, in Egbekan. This is the evidence contraband distinction. Yes, Your Honor. And Egbekan, in the Fourth Circuit after Egbekan, you now need a warrant to conduct any border device searches to advance domestic investigations, as was the outcome in that case. I also want to briefly address the argument about whether or not Riley has been expanded to other exceptions. I know that the government argues that the border is simply different. But again, in search incident to arrest, there are reduced privacy interests of the person under arrest. And here, we're talking about searches of people who have not been suspected of any crime. The rationale is different. Search incident to arrest is to protect the officer or destruction of evidence. And that's much narrower than the border search context. Yes, Your Honor. I do think, however, that you still have to have the tethering analysis. And here, again, a search for evidence doesn't advance the justification, which is excluding the goods from the country. And Judge Costa's opinion, concurring opinion of Molina Isidoro in the Fifth Circuit, breaks down this distinction between evidence and contraband. And I also want to get to the Levy question you had asked earlier, which was that, you know, why was Levy okay? And Riley explicitly contemplates this. You might have some contradictory outcomes if you take the categorical approach of Riley. So they said, look, you can search a cigarette pack incident to arrest, even though cigarette pack is not going to contain anything that could harm an officer, and it's only an evidentiary search, in that case, for drugs. But nonetheless, we will tolerate the slippage in the justification because we take a categorical approach and we don't question subjective motive. But when you look at cell phones as a category, they are so invasive that we impose this higher limit. And so this court does not need to overrule Levy to rule in this case that a warrant or reasonable suspicion of digital contraband is required. It is entirely consistent with Levy, in fact, to say that there is a different rule for devices than there is for physical effects. And if there are incidental physical searches that will reveal evidence, that's okay. That's tolerable because most people do not carry that kind of evidence in the mine run of physical searches. So are you effectively asking us to find that doing a body cavity search for drugs requires less protection than looking at somebody's laptop? Yes, we are, Your Honor. And I think it's because those are two different types of privacy and dignitary harms, and that's consistent with Riley. Again, Riley said you need a warrant for cell phone searches incident to arrest. But, of course, people who are arrested are subject to highly invasive body searches without a warrant. You know, their whole liberty is affected, and they are subject to those invasive searches. But nonetheless, Riley said searches of cell phones are categorically different because they can reveal the mine run of somebody's life, their thoughts. You know, it's like searching someone's home. It's like searching the entire contents of their mind. It's like searching someone's home versus searching someone's body. Again, I think Riley compels this understanding that they're— Well, they don't compel us because no one else has gone as far as you guys are asking us to go, right? I mean, like, let's be careful with the words. Certainly, I think a proper understanding of Riley, and which is what we are asking this court to apply the Riley analysis to do, would say that while there are highly invasive body cavity searches and others, cell phones are essentially different. And I do think that the Riley opinion in the context of search incident to arrest was aware of this. And Ramsey was also aware of this. So Ramsey's involved searches of international mail that's incoming. And the Ramsey court, the Supreme Court, said border officers are not permitted to read incoming international mail without a warrant. So we don't have to reach the question of whether a warrant would be required in those circumstances. But they certainly contemplated that a warrant might be required if you could read incoming international mail. And again, this is in the context of border searches where physical searches of people's bodies are permitted on less than a warrant. So— Well, and definitionally, the body search is going to be looking for contraband, not for evidence, right? I mean, I don't think there's any claim that anybody's looking for evidence of an unrelated crime as opposed to actual contraband and body search, right? That is correct. It is a highly invasive of personal dignity, but it is still nonetheless searching for physical contraband, which is at the very heart of warrantless border searches. Can I ask you an—I'm sorry, if Judge Petterson will shed something else on that. An unrelated question. From your perspective as an amicus rather than as a representative of the defendant here, does it matter whether the defendant— does it matter that the defendant is not a citizen, has status here but is not a citizen? Does that matter to your analysis in terms of excluding people as opposed to contraband from entry? Not for the categorical rule that should apply. And I think the record in the Al-Assad case in the First Circuit, which was not—the factual findings were not disturbed on appeal. The district court found that the searches for excluding non-citizens are not significant enough an interest to justify dispensing with heightened protections across the board. And even the Supreme Court in Riley noted there might be some cell phone searches that do advance interest in officer safety, just as there are going to be certain cell phone searches that might advance that interest in admissibility. But they are not significant enough to justify or tolerate— So that simply goes in the bucket of other things we're weighing on the two sides of the government's interest versus the privacy interest. Yes. And notably in this case, there's no question that the search was not for admissibility, even though the defendant is not a citizen. So we still have the evidence that the government is conducting these searches in many, many cases with no attempt to even justify it as being about anything other than criminal investigatory purposes. Thank you, counsel. Thank you. We'll hear from the government. Thank you. May I begin? Whenever you're ready. Good morning. May it please the court. I'm Robert Pollack. I represent the United States on this appeal. I also represented the United States in the district court below. The Supreme Court has ruled that searches at the border are reasonable simply because they occur at the border. The court has observed that searches—these searches have been deemed reasonable since even before the adoption of the Fourth Amendment. And it has recognized that the government's plenary authority to conduct such searches at the border without probable cause or warrant arises from the inherent right of the sovereign to protect itself. In short, the border is special. It is where the government's interest is at its zenith, and searches of anything that crosses the border is a sovereign prerogative. In the language of the Supreme Court in the Ramsey case, it is the entry into this country from without it that makes a resulting search reasonable. So what's to stop customs from imaging everybody's cell phone when they arrive at JFK and hanging onto it for further review, if necessary, if they decide they want to down the road? I think that seems to be the concern here, that that is—given the unique amount of information that one can get from a cell phone, that's trouble. So at issue in this case is only whether there—is only the sort of constitutional floor. Amicus referred to the fact that Riley noted the facts that in the context of international mail, customs is not permitted to read the mail. That's not based on a Fourth Amendment ruling. That's based on the other two branches of government. Congress has passed laws, and the executive has passed regulations that sort of provide guide rails to the sort of review and the search of international mail coming into this country. Certainly, under the fact of this case, the exact same thing has happened in the context of forensic searches, because CBP has its own policies, which applied in this case and apply across the board, not to conduct forensic searches unless there is reasonable suspicion of certain offenses. So that is what currently prohibits a sort of universal rule, in addition to the obvious technological difficulties, a universal rule of doing advanced searches of everybody's phones. So can you put some meat on the bones for reasonable suspicion? How would you have us define it? Is it about any crime, past, present, future, border-related crimes? Where are the limits? So I think as a matter of constitutional jurisprudence, because the border is special, even reasonable suspicion is not required as a matter of the Fourth Amendment, although the executive has self-imposed this rule, CBP has self-imposed this rule, and it certainly is applicable here. So the only question that's presented for the Court is whether that violates the Fourth Amendment. But the rule of this circuit that is established and has been reaffirmed in multiple cases, it's in United States v. Irving, United States v. Levy, I think it's also in the Taba case, this Court has repeatedly rejected the argument that CBP is somehow limited by either the search for contraband or the search for evidence of crimes that are in sort of what people might regard as CBP's traditional wheelhouse. In the Levy case, the search was related to, there were photocopies of notebooks and things, where the search was related to wire fraud that was purely domestic crime. In Irving, although the charges ended up having a child pornography aspect, none of these searches that happened at the border actually contained digital contraband. They only contained evidence of the crimes, and the contraband was found later in a search of the defendant's home. So why isn't this like an extended border search then, where there's an initial search that begins at JFK, and then after the imaging that continues a couple weeks later as the computer folks start doing searches on the image data? Isn't that a better way to think about this? And that way we don't have to decide whether a level of suspicion is required at the border, because surely it would be required subsequently, right? I'm not sure I follow. I think this is an extended border search. Well, Mr. Conaldus regained expectation of privacy once the search was completed and he entered the country. That's fair, right? That's right. And so then the subsequent searches would require reasonable suspicion. So I think that, as Your Honor noted, this is, I think, an extended border search. The CBP could have simply detained the phone and continued to search it manually over however long it took to do a more thorough search. It's a less invasive, it's less burdensome to the Fourth Amendment rights of the traveler to just copy the phone and let them continue on. To allow that search to be done to its completion. So the distinction between what CBP calls basic and advanced searches and what the case law usually calls manual versus forensic searches is really just one of trying to be more thorough and so keeping a copy of the phone until that's completed. In this case, the argument below, which was accepted by the district judge, is exactly what Your Honor notes. That the searches, the subsequent searches, some weeks after Mr. Conaldus entered the country were just an extension of that border search. And in what way did those later searches advance the purposes, or is it just, I think your position may be it doesn't matter if it advances the purposes of Border Patrol, but the exception to the warrant at the border is an exception and ordinarily we limit those to the purpose of the exception. Right. And so you've got to stop it before it gets in. It or him or whatever has to get stopped before it crosses the border and that's why we go ahead and allow this. How does a three week later forensic search further the interest that underlies the exception? So the border search authority is a plenary, I mean the Supreme Court has repeatedly said that this is a plenary authority to search things that enter the country at the border. As I noted, the phone being brought across the border is subject to that search. It doesn't have to be tethered to- So it's an unlimited, in perpetuity right to search anything that has ever crossed the border? No, but in this case, the CBP could have simply detained the phone, kept it, and spent weeks reviewing it. It was a lesser invasion of the Fourth Amendment interests of Mr. Conaldus to make a copy and let him have it and then continue reviewing it until that- So your position is they could have seized it and kept it indefinitely as long as they had seized the device? They could have then, again, it's indefinitely, in perpetuity, unlimited search of that phone? Well CBP has self-imposed- Which says you can't just sort of search things forever once you seize them. Right. I don't mean to argue that the CBP could do this indefinitely and in fact CBP has sort of created its own guardrails. It has numbers of days, I don't have them in front of me, but there's some number of days that CBP- Well yeah, but those could be changed or eliminated in the drop of a hat. And then we would have a different case, but there have been many circumstances in this context and others where either the legislature or the executive has sort of created- I mean the Constitution provides the floor, not the ceiling. It often happens in many contexts. But is there a floor for the seizure of information at the border under the rubric of the exception for the border crossing? Is there a limitation on how, when, to what extent that data can be searched in the future? A constitutional limitation. There is not one presented by this case. Some period of time- So whatever the limit is, it's not three or four weeks? I think that's right. It's not three or four weeks. So after those later forensic searches were conducted, there was a warrant, right? One of the government's arguments. So how long after was the warrant obtained? How long after the entry, give or take, like five or six weeks? Something like that. It was within a month or two. Was there new information obtained as a result of the stop or the searches that contributed to the probable cause underlying the warrant? So I believe the search warrant affidavit was candid about the fact that there had been a border search that evidence was obtained. But did it rely on the information obtained? I think there likely would have been probable cause even in the absence of that information. Nevertheless, the affidavit did contain evidence that was obtained from the border search. So how can we use the warrant to retroactively bless the search if the warrant itself is dependent on the results of the initial search? Well, there hasn't been- the lower court has not had to address the question of whether the warrant affidavit would still have probable cause. But you raised that as a fallback defense, right? That this information would have been available to the government through the later search warrant anyway, right? I think that's right. I mean, this investigation has- there was a tremendous amount of probable cause that already existed sort of in general terms at the time that this was. That may be true. So why not just get a warrant? Why not get a warrant the day he comes across- I mean, I was a magistrate judge for a long time. I got a lot of short notice phone calls saying if we have a guy or we have a package or we have a car, we need a warrant today. We need a warrant in ten minutes. Right. If there was all that probable cause and you didn't need what came from the sort of pro hoc searches at the border and three to four weeks later, why not just get a warrant? Well, why not- with all due respect, why not get a warrant isn't the Fourth Amendment standard. In April 2019, there had never been a case anywhere in the United States that said a warrant was necessary under these circumstances. And there was abundant case law saying that the government's authority to search everything that crosses the border is preliminary. So just as a sort of factual historical matter, I think the reason why not to get a warrant is because the case law didn't say we needed to at that time. But where we- I mean, we are- these are concerns, right? Judge Park raises this concern. So the three of us are now assigned to this case that has to do with border crossings. I have this iPad with a lot of information about my thoughts on that and maybe my colleague's thoughts later will be in my iPad. But if I go to Canada for a weekend and I come back, Border Patrol can say, oh, it's Miriam. She's on that panel that's challenging our practices. Let's find out what the court is thinking. Why couldn't they do that? Well, CBP can't do that because it would be a violation of CBP's policy. Canada could do that because it's an inherent- Well, I'm not worried about coming back yet. I'm not challenging Canada's process right now. The point I'm trying to make is that it is an inherent attribute of sovereignty to search anything that crosses the border. That's true of the United States. That's true of Canada. That's true of every country in the world. For any reason at all? For any reason at all. That is the rule of Ramsey. It's been reaffirmed repeatedly by the Supreme Court and by this court. You know, the Supreme Court has said, as I opened on, searches at the border are reasonable simply by virtue of the fact that they happen at the border. The authority to do that is plenary. The rule of Riley is that the search incident to arrest doctrine is a narrow exception that only applies in places where the arrestee can hide a weapon or destroy evidence. The border search exception is very different from that. It is not a narrow rule. In Riley, the Supreme Court quoted Learned Hand, drawing a contrast between the search of a man's pockets and the search of his house. And it said that the search incident to arrest only pertains to the search of the man's pockets and the functional equivalent of that, not to the search of the man's house. The border search exception permits a search of the house if the house is brought across the border. From the time of the foundation of the Republic to the present, if everything you own is packed in a covered wagon or a mobile home and taken across the border, or in as many boxes and crates and suitcases as required, if you carry it across the border, it is subject to search. There is no category of— For any reason or for no reason? For any reason or no reason. That has been the—it has never—the Supreme Court and this Court have never held in any case that there is any search at the border that requires probable cause and a warrant. This Court has held that reasonable suspicion, and no more than reasonable suspicion, is required only in cases of invasive searches of the body, things like strip searches, body cavity searches, and things of that nature. So that would counsel for application of the good faith exception? The government's position is that these searches do not violate the Fourth Amendment and that there could be a ruling to that end, but certainly in April of 2019, when this search occurred, there was no case law anywhere in America that said to the contrary. The United States v. Canoe in the Ninth Circuit was the first case, I think, anywhere that made a ruling that was in any way different. Canoe was after what happened here? What was that? Canoe was after the search? Canoe was issued in August of 2019. The search here was in April of 2019. Let me ask you about the case that was argued in this Court on Friday that seems to address some or many of the issues that we've been talking about now. Is that right? Yes, that's right. So this panel would have to presumably hold any decision in this case for that? I think so. So the case that was argued on Friday, I don't have all of the facts on that case, but my understanding is that I did listen to the arguments. That case pertains to a manual search or what CBP calls a basic search, not a forensic search. So it could be that depending on what that panel does, it may or may not sort of cross into the territory of what this panel will do. But certainly it is right that the same issues are implicated there. And I do want to note, while I can, since my time is running low, there have been several questions from the panel about why, if CBP can control the entry of contraband, why not evidence of contraband. And I want to make clear that although under Levy and Irving and Taba and other cases, border searches aren't limited to contraband, and the authority of CBP is not limited to sort of enforcement of the statutes that traditionally relate to contraband. The facts of this case, I think, make unusually clear just why the distinction that the defendant in amicus wants to draw between the intervention of contraband and evidence is really not workable and kneecaps CBP's ability to conduct its investigations even in its wheelhouse of contraband. This is a case where the defendant was conducting an international narcotics trafficking conspiracy that was, in fact, smuggling narcotics through JFK. He wasn't carrying them on his person. They were being smuggled through more sophisticated means than that, by co-conspirators smuggling them in as cargo. But there was evidence at trial in this case that the defendant was, in fact, sending the drug orders. He was aggregating drug orders, and he would send them every day to his co-conspirators at the warehouse in Queens. There was one of the CS that was wearing a wire when he picked the defendant up from the airport, and he complained that the orders had come late that day. And the defendant said on a recording that was played for the jury that the orders came late because the in-flight Wi-Fi wasn't working. He complained that the Wi-Fi was supposed to come with his ticket, and he had to pay extra for it, and it wasn't working. And we admitted in evidence the email that was actually gotten from an email search warrant, not from his phone, of the drug orders for that day, which had the familiar words sent from my iPhone on the bottom of it. So here we have a defendant who was conducting an international narcotics trafficking conspiracy from his cell phone on the in-flight Wi-Fi as he's flying into JFK. Although he wasn't carrying the narcotics, which were being smuggled in a more sophisticated way, that sort of heartland CBP action of trying to interdict those narcotics might not have occurred if not for the investigation of this defendant, who was not the one physically carrying the contraband. So under a question posed by Judge Park earlier, is that under the authority to look for evidence-related crime or to try and stop the person who does bad things coming into our office? So it's both. I mean, in this case, the case law, which is binding on this panel from Irving and Levy and Taba and so on, doesn't restrict CBP by any of those standards. I mean, CBP can just do these border searches if they find evidence of border-related crime or non-border-related crime. But in this case, certainly, there is a foreign national. He's not entitled to come into the United States. He's entering the United States on a tourist visa, and he is engaged in a narcotics trafficking conspiracy, even from his electronic devices while he's flying in to coordinate the shipment of narcotics, which are also being smuggled in through the same airport. So I think that goes to certainly the sovereign's interest in keeping unwanted persons and unwanted contraband out of the country, and it's fundamental to the task that CBP is obligated to work. No other questions. Thank you, judges. Thank you, counsel. We'll hear a rebuttal. Thank you, your honors. So the government is advocating an incredibly broad scope to the border exception, questioning whether even reasonable suspicion would apply, even though that's not really an issue here, but raising that question and essentially asking this court to be comfortable with the Border Patrol setting its own policies and putting up its own guardrails to be sure that it follows the strictures of the Fourth Amendment. And that's not the way the system works, with all due respect. We don't rely on the executive branch to set our guardrails. It's for the courts to decide the scope of the Fourth Amendment. So I wanted to begin with that point. The second point is the court had asked some questions about the case that was argued on Friday. It's the United States v. Alice Segway. That is, as my opposing counsel noted, is a different case involved exclusively a manual search. That's not what this case is. We're a very different category here. So we would urge the court to address that very different question in the context of the facts presented here. Well, I asked you earlier if there's a different – I mean, your first line of argument is that there should be a warrant for all manual and forensic searches, correct? That's correct, your honors. So to that question, we would certainly have to wait for the manual part of it at least, if that is the issue before the other panel. I don't think the court needs to address the manual search question, though. Asked whether – in our view, whether there's a difference, I would say no. But for purposes of resolving this case, it's just not a manual search case. So I do believe this court can focus on the nature of this case, which is the forensic search. I was thinking – I mean, digital data is kind of the line that you and I think Miki were asking for, that anything that involves a device that contains digital data is the scope of – is where you're asking us to require reasonable suspicion or a warrant. Yes, your honor. That is not new. I mean, laptops have been around for several decades. Riley is over a decade old. So what is it that in 2025 now makes the Constitution require this new standard? I mean, I think it's the advancement of technology. But, I mean, we can even timestamp it at Riley, where Riley notes that even 11 years ago, the cell phone technology there and the quantity of evidence that a cell phone now contains. But you're not limited to cell phones. You're also limited to laptops, right? And I mean – and I think the argument is not what does an old-school cell phone look like. It's more like what does an old-school cell phone look like compared to a souped-up laptop? And why is there enough of a difference? Yes. I think, you know, under modern standards where, you know, a terabyte is a common laptop, you know, storage capacity, you're talking about a volume of evidence that could be in excess of what a person would have in their house. Even someone that – And it could have a link to the cloud. Could be linked to the cloud. The device itself has nothing on it but an open portal to the cloud, which stores, depending on how old you are, everything you've had since you were in high school. That's correct, Your Honor. And Judge Rakoff, actually, of the United States v. Smith, thought that that cloud aspect was very relevant at the border because, in fact, even when cell phones come in, even if they contain contraband, you're not preventing evidence from coming into the country because it already exists in the cloud and would be accessible in this country anyway. So that was – that cloud aspect was an important one for Judge Rakoff. Another comment I just wanted to make was counsel indicated that the search warrant application here itself was candid. And I would submit – and this isn't a point that we emphasize sufficiently in our briefs candidly – that, in fact, the search warrant application is troubling in the way that it doesn't describe exactly what happened here. It doesn't describe that customs imaged the phone and – Yes. I guess because we haven't talked about the good faith exception, if Your Honor, please, I would just note here that there was no binding precedent here. We need to deter agents from erring on the side of warrantless searches. Particularly, you know, we would say that Riley was the binding authority. But even absent that, the absence of authority should not justify the violation of the Fourth Amendment that occurred here. So for all those reasons, we ask that the judgment be vacated and the case remanded. Thank you, counsel. Thank you. Thank you all. Thank you.